IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | No. 6:22-CR-00003-JDK-JDL |
| | § | |
| THOMAS GRAY HARDAWAY (05) | § | |
| | § | |

### DEFENDANT THOMAS GRAY HARDAWAY'S
### MOTION TO SEVER TRIAL

Defendant Thomas Gray Hardaway ("Hardaway") moves to sever Hardaway's trial from the trial of co-defendants Susan Hertzberg ("Hertzberg"), Matthew Theiler ("Theiler"), William Hickman ("Hickman"), Christopher Gonzales ("Gonzales"), Jordan Perkins ("Perkins"), Elizabeth Seymour ("Seymour"), Linh Nguyen ("L. Nguyen"), Thuy Nguyen ("T. Nguyen"), Heriberto Salinas ("Salinas"), and Hong Davis ("Davis"), pursuant to Federal Rule of Criminal Procedure 14(a).[1]

## I. INTRODUCTION

The government charged 18 defendants in this case. 15 remain for trial. The government alleges that some combination of these 15 defendants participated in two distinct schemes that violated the Anti-Kickback Statute—one involving Boston Heart Diagnostics' ("BHD") business arrangement with Little River Healthcare ("LRH") and one involving its arrangements with Stamford Memorial Hospital ("Stamford"). Certain defendants intend to raise defenses that are mutually antagonistic and will raise serious Fifth Amendment issues. Additionally, per the

---

[1] Co-defendants Laura Howard and Ruben Marioni have already pleaded guilty in this case, and co-defendant Joseph Bolin is deceased.

1

indictment, certain individuals charged in this case, including Hardaway, have no connection whatsoever to Stamford and had already left BHD prior to the commencement of its business dealings with Stamford.

Evidence presented to establish the alleged criminal nature of BHD's business with Stamford will necessarily result in prejudice to Hardaway. Severing Hardaway from certain defendants as requested in this motion will ensure a fair trial and promote judicial efficiency ensuring concise trials addressing the guilt or innocence of a manageable number of defendants.

Severance of Hardaway's trial from the trial of certain co-defendants is necessary for three reasons. *First*, this is a textbook case of mutually antagonistic defenses, as the defense of certain co-defendants necessarily requires a jury to disbelieve Hardaway's defense or vice versa. The co-defendants, especially Hertzberg and Theiler, have made clear that they will argue that BHD's Texas-based sales representatives, including Hardaway, concealed unlawful activities from them. Hertzberg Mot. to Sever [Dkt. No. 394]². Hardaway, on the other hand, intends to put on evidence that he was never engaged in any unlawful activity. To the contrary, it was BHD's *executives*—not sales representatives like Hardaway—that negotiated the agreement at issue and managed the

---

² Hertzberg and Theiler are unopposed to Hardaway's Motion to Sever. Additionally, Hertzberg and Theiler indicated that if the joint trial is severed, they would like to try their case first. Hardaway is unopposed to Hertzberg and Theiler trying their case first. Additionally, counsel for Hardaway has a conflict with the new trial date as set by recent order on June 5, 2023. When the Motion to Continue [Dkt. No. 366] was filed on May 18, 2023, counsel for Hardaway optimistically (and mistakenly) did not anticipate a conflict. However, the Government's estimated length of trial and this Court's Order [Dkt. No. 383] resetting the trial date to October 16, 2023 triggered a conflict that Hardaway's counsel hoped would be avoided. Unfortunately, Hardaway's counsel is preferentially set on October 16, 2023 in Harris County District Court before Judge Ravi Sandill in the matter styled *Rollins v. Paul Pressler, et al.*, Case No. 2017-69277A. The Rollins trial date was set on May 3, 2023. This was a conflict Hardaway's counsel hoped to avoid, but now it must be brought to the Court's attention.

business relationship (as well as its contemporaneous risk) between BHD and LRH. Under these circumstances, it would be fundamentally unfair to try Hardaway together with Hertzberg and Theiler.

*Second*, the antagonistic defenses of Hertzberg and Theiler will detrimentally impact Hardaway's Fifth Amendment rights. This is especially true in the event that either or both testify about Hardaway's alleged concealment of the purported conspiracy from BHD's senior executives. Further, Hertzberg and Theiler may be able to highlight for the jury that Hardaway did not similarly testify to rebut their allegations of concealment. Such an argument would be perfectly proper for Hertzberg and Theiler and simultaneously violate Hardaway's Fifth Amendment right against self-incrimination. Thus, Hardaway seeks to be severed from Hertzberg and Theiler

*Third,* in addition to seeking to be severed from co-defendants Hertzberg and Theiler due to mutually antagonistic defenses, Hardaway seeks to be severed from all co-defendants who were directly involved with Stamford—namely, Theiler, Hickman, Gonzales, Perkins, Seymour, L. Nguyen, T. Nguyen, Salinas, and Davis (collectively, the "Stamford Co-Defendants"). A joint trial will result in substantial spillover prejudice. The vast majority of the alleged conspiracy outlined in the Indictment involves conduct that post-dates Hardaway's departure from BHD and in which he, therefore, had zero knowledge or participation. As reflected in the Indictment, the majority of the alleged conspiracy concerns BHD's purported illegal relationship with Stamford and Stamford's business arrangements with marketers operating various management service organizations ("MSOs"). But Hardaway left BHD *before the operative agreement with Stamford*

*was signed and well before BHD had processed a single sample for Stamford*.³ Hardaway thus had no contact with—or even knowledge of—the physicians and marketers who were charged for their participation and/or involvement with Stamford.⁴

Hardaway's utter lack of involvement in the alleged Stamford scheme is plain on the face of the Indictment. Not one of the overt acts identified in the Indictment mentions Hardaway. Indeed, only four of the numerous payments listed as overt acts occurred prior to Hardaway's departure from BHD. And the Indictment is devoid of even a single allegation connecting Hardaway to Stamford, the purported illegal MSOs, or the indicted physicians. Indeed, the alleged MSO sponsors and physicians all live hundreds of miles away from geographic territory Hardaway was responsible for at BHD.

Hardaway is not connected to Stamford. Any evidence related to that scheme would be utterly prejudicial and wholly irrelevant to his alleged guilt. The Government will seek to introduce evidence of criminal conduct related to BHD's dealings with Stamford, the marketers working with Stamford, and doctors who invested in MSOs and sent samples to Stamford to obtain BHD testing. None of this evidence relates to Hardaway, but the jury is likely to lump Hardaway together with those involved or improperly infer guilt from conduct in a separate alleged conspiracy with which Hardaway was not involved. Thus, Hardaway seeks to be severed from

---

³ Even if one assumes that Hardaway did not depart BHD prior to the Stamford agreement's signature and implementation, Hardaway still had no contact with Stamford or involvement with the Stamford business arrangement.

⁴ Notably, the Stamford Defendants reside in North Texas, or the east coast, hundreds of miles away from Hardaway's sales territory in San Antonio.

those individuals directly involved with Stamford—the Stamford Co-Defendants— and to proceed to trial with only those individuals who were exclusively involved with BHD and/or Little River.[5]

Severance is not only necessary to ensure a fair trial for the defendants, but it will also promote judicial economy. A trial with even six defendants, let alone *fifteen* defendants is impracticable. Severing Hardaway from the Co-Defendants pursuant to Rule 14 would thus promote judicial economy as well as: (1) avoid the severe prejudice from the mutually antagonistic defenses; (2) protect Hardaway's Fifth Amendment right against self-incrimination as required under Fifth Circuit law; and (3) avoid the substantial spillover prejudice from evidence of the unrelated alleged Stamford scheme. Severance provides a practical means to try this multi-defendant case in a manner that ensures fair and efficient trials for the parties, the Court, and prospective jurors.

## II. FACTUAL BACKGROUND

On January 13, 2022, almost six years after Hardaway resigned from BHD, the Government filed an Indictment, [Dkt. No. 1], charging a single count of conspiracy to commit illegal remunerations against eighteen defendants including Hardaway (the "Indictment"). The single count alleges, in reality, two separate and distinct schemes to violate the Anti-Kickback Statute: one involving BHD's business with LRH; and another one involving BHD's distinct, subsequent relationship with Stamford.

---

[5] The multiple differences between BHD's dealings with LRH and its dealings with Stamford raise the question of whether they are properly indicted as a single conspiracy at all. But, it appears the government was faced with a statute of limitations problem and simply tacked on the wholly distinct Stamford scheme in a (not even subtle) attempt to avoid its limitations issue. This improper pleading will be a subject of Hardaway's motion to dismiss. But, regardless, the Government should not be permitted to compound this improper pleading by introducing evidence of this entirely different alleged scheme in order to convict Hardaway at single mega-trial.

The defendants can similarly be separated into distinct groups: those who were involved with BHD or LRH but had no direct involvement with Stamford, and those who worked with or through Stamford. The Stamford Defendants include the marketers and doctors who worked with Stamford, as well as the BHD executive who negotiated the contract between BHD and Stamford. As alleged in the Indictment, Defendants Hickman, Gonzales, and Perkins were marketers who worked with LRH and subsequently transitioned to marketing for Stamford. Defendants Seymour, L. Nguyen, T. Nguyen, Salinas, and Davis are doctors who invested in MSOs managed by Hickman, Gonzales, and Perkins. Finally, Theiler was allegedly involved in the negotiations between BHD and Stamford. Dkt. 1 at pp. 34-35. The remaining defendants—Hertzberg,[6] Kraus, Parnell, Hardaway,[7] Madison, and Cook[8]—were exclusively involved with BHD and/or LRH, and the Indictment fails to allege any credible connection between these defendants and Stamford.

In order to pull conduct related to LRH inside the applicable statute of limitations, the Government had to identify conduct that occurred after January 13, 2017, and allege it was connected to the prior conduct it is seeking to prosecute. But BHD's dealings with LRH had long ended by January 2017—and critically—Hardaway was no longer employed with BHD at that time. So, to get around the limitations issue, and in a classical tail wagging the dog move, the

---

[6] Hertzberg has alleged the Indictment's singular effort to connect her to Stamford was erroneous as the documents relied upon by the Government relate to business dealing with Stamford Hospital in Stamford, Connecticut—not Stamford Memorial Hospital in Texas. Dkt. 394 at p. 6-7.

[7] Krauss, Parnell, and Hardaway each resigned from BHD prior to the commencement of BHD's relationship with Stamford.

[8] Madison and Cook are executives at LRH and had no relationship to Stamford.

6

Government has erroneously connected the Stamford scheme to its allegation related to LRH despite the obvious and indisputable differences between the two arrangements.[9]

As alleged, Hardaway is connected to this case only through his employment as a sales representative for BHD. Dkt. 1 at pp. 26, 28, 30, 32. BHD is a clinical diagnostic laboratory specializing in advanced blood testing. *Id.* at p. 11. Per the Indictment, while Hardaway was employed with BHD, LRH contracted with BHD to run advanced lipid tests. *Id.* at p. 18. LRH was a critical access hospital ("CAH"). *Id.* at p. 18. Because LRH lacked the capacity to perform specialized cardiac tests, LRH paid BHD a flat rate (i.e., a firm set price per lab test performed) to utilize BHD's testing for their patient population. *Id.* at p. 26. Hardaway resigned well before BHD finalized its relationship with Stamford.

BHD negotiated and entered into agreements with Stamford to provide laboratory services after Hardaway departed BHD.[10] The relationship between BHD and LRH differed significantly from BHD's relationship with Stamford. Stamford and BHD agreed that BHD would bill Medicare directly for each federal sample referred from Stamford. *Id.* at p. 35. On the other hand, LRH paid BHD a flat fee per test performed and LRH assumed all responsibility to bill for both federal and commercial samples. *Id.* at p. 42. BHD only ever billed LRH, and it was LRH that billed Medicare or commercial payors for the tests BHD performed. *Id.*. In the Stamford scheme,

---

[9] The Government has improperly charged the Stamford relationship and the LRH relationship as one connected and continuing conspiracy in an obvious attempt to avoid statute of limitations implications, and in hopes of utilizing the far more nefarious and egregious facts of the alleged Stamford arrangement against Defendants, including Hardaway, who simply had no connection whatsoever to Stamford.

[10] The Indictment alleges BHD entered into an agreement with Stamford on May 31, 2016. *See* Dkt. 1 at p. 34. However, the arrangement was not implemented until mid-August 2016. *See* Hertzberg Motion to Sever [Dkt. No. 394 at 6].

to the contrary, it was BHD that billed Medicare directly for the federal samples it received from Stamford. *Id.* at p. 35. Hardaway never had business dealings with Stamford and was not even employed with BHD[11] when the business dealings between BHD and Stamford commenced.

### III. ARGUMENT AND AUTHORITIES

Federal Rule of Criminal Procedure 14 provides, "[i]f the joinder of offenses or defendants in an indictment…appears to prejudice a defendant or the government, the court may order separate trials of counts, *sever the defendants' trials*, or provide any other relief that justice requires." (emphasis added).

To warrant Rule 14 severance relief, "a defendant must show that (1) the joint trial [would prejudice him] to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *United States v. Ledezma-Cepeda,* 894 F. 3d 686, 690 (5th Cir. 2018) (internal quotation omitted); *United States v. Diaz*, No. 4:18-CR-00237, 2019 WL 6119564, at *1 (S.D. Tex. Nov. 18, 2019). Though the Fifth Circuit typically evinces a preference for joint trials of defendants who are indicted together, both the Fifth Circuit and the "Federal Rules of Criminal Procedure recognize that circumstances may be presented where the prejudice to a defendant from joinder with a codefendant(s) in a joint trial overrules" such a preference. *United States v. Lugo Morales*, No. 4:17-CR-203-ALM-KPJ, 2019 WL 2417648, at *2 (E.D. Tex. May 23, 2019) (internal quotation omitted); *see also United States v. Cortinas*, 142 F. 3d 242, 248 (5th Cir. 1998) (vacating the convictions of co-defendants and finding the motions for severance should have been granted

---

[11] BHD did not finalize the agreement with Stamford until August 2016, which is demonstrated by Burnell's dated initials on page 8 of Hertzberg's Sealed Exhibit F to her Motion to Sever Trial [Dkt. No. 395].

where limiting instructions given by the trial judge were inadequate to mitigate the prejudicial effect); *United States v. Beard*, No. 3:20-CR-0567-B, 2022 WL 1321550, at *3 (N.D. Tex. May 3, 2022) (granting the co-defendant's Motion to Sever). For instance, Fifth Circuit Judge Goldberg cautioned:

> Conspiracy trials, with their world-girdling potential, are given more extensive thrust by the admission of hearsay testimony, the use of conspiratorial acts to prove substantive offenses, and the joint trial of defendants. These pressures alone threaten to undermine the fair consideration of individual conspiracy defendants. However, the dangers inherent in joint trials become intolerable when the co-defendants become gladiators, ripping each other's defenses apart.

*United States v. Romanello*, 726 F. 2d 173, 182 (5th Cir. 1984). Just as Judge Goldberg warned, a joint trial with Hertzberg and Theiler and the Stamford Co-Defendants in the present case threatens to undermine Hardaway's right to a fair trial where (a) Hertzberg and Theiler plan to assert a mutually antagonistic defense; and (b) the Government has connected two distinct arrangements – one of which (Stamford) Hardaway simply isn't involved with whatsoever – into one disjointed conspiracy.

### A. Severance Must Be Granted Because Hardaway and the Co-Defendants Will Assert Mutually Antagonistic Defenses That Will Impact Fifth Amendment Rights

"It is undisputed that, in some circumstances, mutually antagonistic defenses may be so prejudicial as to mandate severance." *United States v. Neal,* 27 F.3d 1035, 1046 (5th Cir. 1994) (internal quotations omitted). This case involves precisely those circumstances.

The parties intend to present mutually antagonistic defenses at trial. Severance is required where defenses are antagonistic to the point of being irreconcilable and mutually exclusive. *Id.*; *Romanello*, 726 F. 2d at 177. "The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the

9

other." *Id*. The defense of a defendant reaches a level of antagonism that compels severance of the defendant, if the jury, "in order to believe the core of testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *United States v. Berkowitz*, 662 F. 2d 1127, 1134 (5th Cir. 1981); *Neal*, 27 F. 3d at 1046 (if the core of one of the defendant's defenses is contradicted by that of another, the defenses are unreconcilable, and thus, antagonistic). This sort of conflict between defendants creates the compelling prejudice that mandates severance and presents the danger of "a substantial possibility" that the "jury will unjustifiably infer that this conflict alone demonstrates that both [co-defendants] are guilty." *Berkowitz*, 662 F. 2d at 1134; *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) (explaining severance should be granted if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence). "Severance may be required even if only one defendant accuses the other, and the other denies any involvement." *Romanello*, 726 F. 2d at 177.

For example, in *United States v. Romanello*, the Fifth Circuit found the trials of co-defendants should have been severed where the core of one party's defense is the guilt of his co-defendant. 726 F. 2d at 178, 182. The Fifth Circuit held that clear precedent existed for reversing the convictions of defendants where they were stripped of a fair trial due to the trial court's failure to sever the trials. *Id*. at 178. The Fifth Circuit cited *United States v. Johnson*, explaining:

> It is not necessary for each defendant to base the core of his defense on the direct accusation of his co-defendant. Severance may be required if only one defendant accuses the other, and the other denies any involvement. For example, in *United States v. Johnson,* [478 F.2d 1129 (5th Cir. 1973)] two defenses were held to be "completely contradict[ory]" though only one defendant (Smith) had incriminated his co-defendant (Johnson). 478 F.2d at 1132. The government had charged both Smith and Johnson with passing counterfeit money. Smith's defense at trial was that he was a government informer whose only purpose was to help the police

10

> apprehend Johnson. Johnson's sole defense was that he had "played no part in the crime and was not present when it was committed." *Id.* Johnson never accused Smith; yet this Court held that "the theory of Smith's defense was directly in conflict with Johnson's." *Id.* at 1132–33. The trials of the co-defendants should have been severed; therefore, Johnson's conviction was reversed. *Id.*

*Id*. at 177–78.

In the present case, Hardaway faces the very prejudice against which Rule 14 severance is designed to protect. Hertzberg and Theiler's theory of defense is directly and irreconcilably in conflict with Hardaway's. At trial Hardaway will prove that he was not aware of the terms of LRH's relationship with the MSOs at issue, that BHD management was responsible for performing due diligence and resolving compliance concerns connected to the new business arrangement with LRH, and that he lacked knowledge of whether any of the MSOs operated unlawfully. Hardaway will present evidence that legal counsel had informed him that MSOs were, in fact, legal when they were not being compensated for samples that would be billed to federal healthcare programs. Hardaway will also present evidence that BHD management—including Hertzberg and Theiler—managed the LRH relationship and met directly with LRH executives.

Hertzberg and Theiler, on the other hand, have indicated that the core of their defense will be to point to the finger at Hardaway, and other defendants, for engaging in and concealing the alleged scheme. Specifically, Hertzberg and Theiler contend their defense will be that BHD's Texas-based sales representatives acted in furtherance of a conspiracy to violate the AKS in connection with certain unlawful MSOs, and concealed such unlawful activity from Hertzberg and Theiler. Clearly these two defense theories are irreconcilable and mutually exclusive. That is, in order for a jury to believe the core defense of Hertzberg and Theiler—*i.e.*, that Hardaway and others engaged in the scheme and concealed it from the BHD executives, the jury must necessarily disbelieve the core defense of Hardaway, which is the MSO arrangements were legal as long as

they excluded samples that would be billed to federal healthcare programs, and that it was BHD executives Hertzberg and Theiler who were responsible for negotiating, performing due diligence, ensuring compliance, and executing the agreements with LRH. Such conflict creates substantial and compelling prejudice that threatens to undermine the fair consideration of Hardaway's defenses and cannot be mitigated with a limiting instruction. Therefore, the joint trial should be severed.

In addition, a joint trial with Hertzberg and Theiler is likely to impact Hardaway's Fifth Amendment rights due to the antagonistic defenses the parties clearly intend to present and the likelihood that at least one of them will testify in support of their defense at trial.

Severance is appropriate in cases where defendants have antagonistic defenses and one chooses to testify while the other exercises his constitutional right not to do so. *See De Luna v. United States,* 308 F.2d 140 (5th Cir. 1962). *De Luna* involved two defendants who were jointly tried for drug trafficking. *Id.* at 141. One defendant testified and pointed the finger at the other defendant, who chose not to testify. *Id.* at 142. In closing argument, the testifying defendant's attorney encouraged the jury to credit his client's testimony and draw a negative inference about the non-testifying defendant's decision not to testify. *Id.* at 143. The Fifth Circuit found that it was entirely appropriate for the attorney to present such an argument to the jury, but that the situation violated the non-testifying defendant's Fifth Amendment rights. Based on this conclusion, the Fifth Circuit reversed the jury's decision in the case and determined that this was the type of circumstance where "the trial judge's duty is to order that the defendants be tried separately." *Id.* at 141.

Here, Hertzberg has already made it clear in her Motion to Sever, [Dkt. 394], that she intends to cast blame on Hardaway and other Co-Defendants at trial. Because this is a situation where the Co-Defendants intend to present "mutually exclusive or irreconcilably antagonistic defenses" and are likely to encounter Fifth Amendment issues with respect to choosing whether to testify, severance is required. *See, e.g., United States v. Fisch*, No. 4:11-cr-00722, 2015 WL 128090, at *3 (S.D. Tex. Jan. 8, 2015) (In denying the motion to sever, the court cited to *De Luna* and noted that the holding was for "situations in which codefendants tried together assert mutually exclusive or irreconcilably antagonistic defenses.").

**B. Hardaway Should Be Severed Due to the Spillover of Prejudice Resulting From the Distinct Alleged Stamford Scheme, Which Occurred After Hardaway Left BHD**

Federal Rule of Criminal Procedure 8(a) allows an indictment to "charge a defendant in separate counts with two or more offenses if the offenses charged…are of the same or similar character, or are based on the same act or transactions, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8. However, if the joinder of offenses or defendants in an indictment prejudices a defendant, the court may order separate trials. Fed. R. Crim. P. 14(a). Where the evidence requires a finding of separate schemes, "severance may conceivably be the only effective remedy available to prevent prejudice resulting from the spillover" across the lines separating the multiple distinct schemes. *United States v. Papia*, 560 F. 2d 827, 838 (7th Cir. 1977). Courts recognize, "[a] limiting jury instruction may help eliminate the undue prejudicial nature of particular evidence; however, some evidence is so powerful that even the best worded and most well-intentioned jury instruction cannot eliminate the undue prejudicial effect." *United States v. Mitchell*, No. 3:13-CR-128-L, 2013 WL 5377869, at *5 (N.D. Tex. Sept. 26, 2013).

Here the Government attempts to allege a single conspiracy, but that alleged single conspiracy is comprised of two distinct and disconnected schemes.[12] The two schemes involved separate and materially different contractual arrangements and no semblance of a larger common plan. Critically, many of the Defendants who were involved with BHD's dealings with LRH simply are not involved with Stamford. Further, Hardaway withdrew from the first alleged scheme outside of the statute of limitations and never participated in, or even had any knowledge about, BHD's arrangement(s) with Stamford. The introduction of evidence relating to Stamford would cause such substantial prejudice to Hardaway that he would be denied his right to a fair trial. Accordingly, because Hardaway (i) had no involvement with Stamford; and (ii) withdrew from any alleged scheme when he left BHD, before BHD's arrangements with Stamford began, Hardaway would suffer severe prejudice from a joint trial that includes evidence related to Stamford.

### i) *The Presentation of Evidence Related to a Separate and Distinct Scheme Will Cause Substantial Prejudice*

Hardaway was never involved with Stamford, and notably, the Government does not allege that he was. The Government is unfairly attempting to use a joint trial to cast guilt upon Hardaway. Under these circumstances, it is unduly prejudicial for (i) the jury to hear testimony and evidence

---

[12] Hardaway joins the Motion to Sever filed by Madison and Cook [Dkt. 397] to the extent it argues that joinder is also improper under Rule 8(b) because the alleged LRH and Stamford schemes were distinct and separate conspiracies. Dkt. 397 at 12-14 (citing *Kotteakos v. United States,* 328 U.S. 750, 754 (1946)). But even if the Court finds that the two distinct conspiracies could be charged as a single conspiracy under Rule 8(b), severance is still necessary under Rule 14(a) to avoid the substantial spillover prejudice that would result from the introduction at a trial against Hardaway of evidence regarding the far more egregious alleged Stamford scheme which he had no knowledge of or involvement in. And to be clear, Hardaway does not concede that BHD's relationship with either LRH or Stamford was a conspiracy to violate the Anti-Kickback Statute or was in any way unlawful.

14

about multiple schemes that the Government has charged as one, but one does not involve Hardaway; and (ii) the jury to hear statements allegedly made in furtherance of the alleged Stamford scheme as evidence of a larger conspiracy. Without severing the trials, there is considerable danger the jury could convict based upon cumulative evidence of separate schemes, rather than based on the evidence relating to each defendant. Justice therefore requires a severance of Hardaway's joint trial from the Stamford Co-Defendants.

To connect LRH and Stamford the Government alleges "LRH co-conspirators agreed to continue the MSO kickback scheme with another Texas hospital," Stamford. *See* Dkt. 1 at p. 33. However, the Government's mere assertion the conspiracy flowed from LRH to Stamford does not make it so. *First*, the Indictment sets forth two *separate* agreements. The separate agreements had materially different billing arrangements and terms, including a direct agreement (entered into after Hardaway left BHD) with an MSO for the benefit of Stamford. No such agreement is alleged as to LRH. *Second*, while there are certain overlapping defendants (marketers and the physicians they marketed to), there are numerous defendants with no connection whatsoever to Stamford. Defendants Madison and Cook are executives at LRH and had no purported connection to Stamford. Similarly, Defendants Hardaway, Parnell, Kraus, and Hertzberg had all resigned from BHD at the time its relationship with Stamford commenced. The Government's bare allegation that the co-conspirators (all of them) agreed to continue the alleged conspiracy with Stamford is false on the face of the Indictment. Finally, alleging two schemes, yet improperly trying them as one, will result in confusion to the jury and, as the Fifth Circuit cautions, risks the danger of defendants becoming entangled and fused together in the eyes of the jury such that a fair trial cannot be maintained.

*1. Distinct Contractual Agreements With Materially Different Terms*

The Indictment makes plain that the LRH and Stamford agreements contained separate billing and separate arrangements with MSOs. For example, LRH billed both commercial and federal insurers for the tests, *s* [Dkt. 1 at p. 26], whereas Stamford billed commercial insurers for all commercial samples and <u>BHD billed</u> federal insurers for all federal samples. *See Id.* at p. 35. These are not minor details. They show that the conduct with respect to Stamford was allegedly far more egregious than what is alleged as to LRH and they are highly relevant to the issues and defenses likely to arise at trial. These distinctions between the two alleged schemes are critical to whether there would be a perceived benefit for BHD to seek to induce federal samples, and why no such incentive for inducement arose from BHD's dealings with LRH.

Moreover, as alleged in the Indictment, the use of MSOs in the two alleged schemes is also dissimilar. The Government alleges that BHD directly entered into a management services agreement with BenefitPro, one of the MSOs alleged to have paid illegal kickbacks, on behalf of Stamford. *See Id.* at p. 36. However, the Government does not allege that BHD ever entered into an agreement with an MSO on behalf of or in connection with LRH. Indeed, BHD never entered into an agreement with an MSO during its relationship with LRH.

*2. Separate Parties*

The 39 paragraphs of the Indictment devoted to the Stamford arrangement contain no mention of Hardaway and multiple of his co-defendants. For good reason. Those individuals had no involvement whatsoever in the alleged Stamford scheme. Per the Indictment, none of Hardaway, Parnell, Kraus, Madison, or Cook had any involvement with Stamford.[13] In fact,

---

[13] Although the indictment attempts to link Hertzberg to the Stamford arrangement Hertzberg's Motion for Severance explains the tenuous nature of these links. Dkt. 394 at pp. 6-7.

Hardaway resigned from BHD[14] before BHD became involved with Stamford. The Government will not be able to offer any evidence to show Hardaway participated in or even a knew about BHD's arrangement with Stamford. In fact, Hardaway left BHD prior to August 2016 when BHD's relationship with Stamford was formalized, and months before any alleged illegal payments arising from Stamford business were made in November 2016. To state the obvious, November is after August. It would be unduly prejudicial for Hardaway to be included in a trial where evidence of a separate alleged scheme or conspiracy that only began after he was no longer with BHD is presented and treated as a larger conspiracy involving him.

Nor will a limiting instruction suffice to cure the spillover prejudice. A jury will not be able to put aside evidence of the alleged Stamford scheme when it is charged in the very same conspiracy. Because joinder of the alleged LRH scheme and alleged Stamford scheme unduly prejudices Hardaway and undermines his right to a fair trial, this Court must sever Hardaway for trial.

> **C.** **The Interests in a Fair Trial and the Interests of Judicial Economy Both Demand Severance**

A judge is free to make an independent assessment of severance based on various factors—including the number of defendants. *United States v. Casamento*, 887 F. 2d 1141, 1152 (2d Cir. 1989). In *United States v. Casamento*, the court found that if the estimated length of the Government's case is more than four months and includes ten or more defendants, the prosecutor should be required to make an especially compelling justification for why a joint trial of all

---

[14] Hardaway left BHD to run his own marketing company that operated MSOs strictly pursuant to guidance from its counsel. Hardaway, and his companies, had no connection whatsoever to Stamford, its related MSOs, or these indicted physicians.

defendants is more consistent with the fair administration of justice than a manageable division of the case into separate trials for groups of defendants. *Id*. Accordingly, when faced with the prospect of a mega-trial, the court adopted a presumption *against* a joint trial and *for* severance. Likewise, the Fifth Circuit "echo[s] concerns regarding conduct of criminal megatrials expressed by the Second Circuit in *United States v. Casamento.*" *United States v. Ellender*, 947 F. 2d 748, 754 (5th Cir. 1991). The Fifth Circuit reasoned, "[e]xceedingly long trials impose substantial burdens on the trial court, attorneys, defendants, support personnel, and particularly on jurors." *Id*.

Currently, the Government has *fifteen* defendants set for trial. The Government cannot fairly try all fifteen defendants at the same time. In fact, the Government cannot effectively try all fifteen defendants at once for the simple fact that not everyone will fit in the courtroom. Moreover, the length of a trial for fifteen defendants will be substantially burdensome for the Court, the defendants, and the jurors. Therefore, pursuant to Rule 14, severance is necessary because (1) a joint trial would prejudice Hardaway to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighs the Government's interest in economy of judicial administration.

## IV.  CONCLUSION

Rule 14(a) was designed to prevent precisely the sort of prejudice Hardaway would suffer here if tried together with his co-defendants. Accordingly, Hardaway respectfully requests this Court enter an order granting severance of Hardaway's trial from the trial of Hertzberg, Theiler, and the Stamford Co-Defendants.

Dated: July 3, 2023

Respectfully submitted,

By: */s/ Gene R. Besen*
    Gene R. Besen
    Texas Bar No. 24045491
    gbesen@bradley.com
    Elisha J. Kobre
    Texas Bar No. 24127663
    ekobre@bradley.com

Bradley Arant Boult Cummings LLP
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone (214) 257-9800
Facsimile (214) 939-8787

Attorneys for Thomas Gray Hardaway

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system on this 3rd day of July, 2023.

*/s/ Gene R. Besen*
Gene R. Besen

## **CERTIFICATE OF CONFERENCE**

On June 30, 2023, I contacted AUSAs Nathaniel Kummerfeld and Adrian Garcia via electronic mail and text message to ascertain whether they would consent to the requested relief. As of the time of this filing, I have not received a response.

*/s/ Gene R. Besen*
Gene R. Besen