IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | No. 6:22-CR-00003-JDK-JDL |
| | § | |
| THOMAS GRAY HARDAWAY (05) | § | |

### DEFENDANT THOMAS GRAY HARDAWAY'S MOTIONS IN LIMINE

Defendant Thomas Gray Hardaway ("Hardaway") hereby files the following two motions *in limine* requesting that this Court preclude Plaintiff United States of America (the "Government") from eliciting testimony or offering evidence at trial on the subject matters set forth below.

### BACKGROUND

The Government indicted Mr. Hardaway based on allegations that he conspired with others to violate the Anti-Kickback Statute ("AKS"). Mr. Hardaway was a sales representative at Boston Heart Diagnostics ("BHD") during the period at issue until he resigned from BHD in July of 2016. (Dkt. 1, p. 11 at ¶ 33); (*see also* Dkt. 445, Exhibit A). The Government alleges that, as a sales representative for BHD, Mr. Hardaway played a role in facilitating kickbacks to doctors in return for referrals of testing samples to BHD that were ultimately reimbursed by federal healthcare programs. (Dkt. 1, p. 17 at ¶¶ 4–6).

The alleged kickbacks to the doctors took the form of profit sharing in Management Service Organizations ("MSOs"). (Dkt. 1, p. 17 at ¶ 5). The doctors invested in MSOs, such as Ascend and BenefitPro, that had contracted with LRH and Stamford to provide marketing services for the hospitals—with fees payable by the hospitals to the MSOs based on net revenue generated by the hospitals for testing. *Id*. As alleged, the doctors received distributions from the MSOs (profit

1

sharing) because of their investments in the MSOs, and the source of the profit was directly tied to the revenue produced by LRH and Stamford from billing federal healthcare programs for the testing. *Id.* LRH and Stamford paid BHD on a per-test basis for providing laboratory services.

Additionally, BHD and the MSOs had business dealings with hospitals other than LRH and Stamford. These hospitals are not referenced in the Indictment, and Government has not implicated these hospitals at any point in this case.

Mr. Hardaway also created his own MSO ("Rise") while he was employed at BHD—completely unrelated to the MSOs identified in the Indictment. Accordingly, Rise is not referenced in the Indictment. The Government did not charge Mr. Hardaway or anyone else based on Rise's conduct, and, to date, has not made any statements implicating Rise in this case.

### Motion In Limine 1: To Exclude Evidence of Rise

Mr. Hardaway requests that this Court preclude the Government from eliciting testimony or proffering evidence throughout the trial, including during opening statements; during testimony; and during closing, that mentions or in any way implicates any alleged illegal conduct related to Rise.

The risk of confusion and misleading the jury by implicating Rise outweighs the probative value of any evidence related to Rise.[1] *See* Fed. R. Evid. 403; *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009) ("Rule 403 limits the admissibility of relevant evidence, explaining that although

---

[1] The Government has not provided notice under Fed. R. Evid. 404(b) seeking to introduce evidence of uncharged criminal conduct. Mr. Hardaway has filed a motion for early disclosure of Rule 404(b) evidence that this Court has not yet ruled on. (Dkt. 453). To the extent any Rise-related evidence is subject to Rule 404(b), the Government carries the burden to establish admissibility. *United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014) (The Government "maintain[s] the burden of demonstrating—in every case—that a prior [crime, wrong, or act] is relevant and admissible under 404(b).").

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.") (internal quotations omitted).

First, evidence regarding Rise carries little probative value. The Government's case rests on the operation of the MSOs identified in the Indictment, as that is where the alleged kickbacks occurred. Evidence regarding the operation of Rise has no bearing on whether the indicted MSOs operated unlawfully.[2] Specifically, evidence of Rise's conduct does not shed any light on why the indicted MSOs paid doctors and how those specific payments may have violated the AKS; nor does it shed light on Mr. Hardaway's knowledge of how the *indicted* MSOs were operating. Rise operated entirely independent of the indicted MSOs—with separate contracts and separate parties. And the operation of Rise does not demonstrate the intent of Mr. Hardaway to further the unlawful purpose of the *alleged* conspiracy, which does not involve Rise. (*See* Dkt. 1). Even if evidence regarding Rise could demonstrate that Mr. Hardaway had knowledge of how the Rise the Rise MSOs operated, such evidence is not probative of how the MSO's implicated in *this case* operated.

In comparison, there is an extreme risk that presenting evidence related to Rise will confuse and mislead the jury. This is a complex case involving eighteen total defendants in a wide variety of roles: MSOs, hospitals, clinical diagnostic laboratories, and doctors. There are a multitude of arrangements and/or agreements included in the discovery but not even mentioned in the Indictment. Specifically, Mr. Hardaway is not alleged to have had any dealings with the indicted MSOs and no involvement whatsoever with Stamford hospital. (Dkt. 1). Mr. Hardaway is included only through his employment as a sales representative with BHD. *Id.* Rise is not mentioned *anywhere*. *Id.*

---

[2] The MSOs themselves were not indicted, but the individuals who operated the MSOs were. Nonetheless, the conduct of the MSOs is heavily referenced in the Indictment.

Allowing the Government to introduce evidence about Rise does nothing to shed light on the actions of the indicted MSOs or Mr. Hardaway's knowledge of such. It will only add further unnecessary confusion for the jury. Thus, this Court should not allow the Government to confuse the jury by introducing highly prejudicial and irrelevant evidence related to Rise.

**Motion In Limine 2: To Exclude References to Any Hospitals Not in the Indictment**

Mr. Hardaway requests that this Court preclude the Government from eliciting testimony or proffering evidence that mentions or in any way implicates any hospital other than LRH or Stamford throughout the trial including during opening statements, during testimony, during closing, or any other time.

The risk of confusion and misleading the jury by introducing evidence of arrangements with other hospitals outweighs the probative value. *See* Fed. R. Evid. 403; *Clark*, 577 F.3d at 287.

Evidence regarding any other hospitals' arrangements carries little probative value. As discussed above, the alleged kickbacks occurred through doctors' profit sharing with the indicted MSOs due to the MSOs' contracts with *LRH* and *Stamford*. Evidence of separate contracts that the parties may have had with other hospitals does nothing to demonstrate that the MSOs committed illegal remuneration based on their contracts with LRH and Stamford, which is the only conduct at issue in the Indictment. This evidence would simply demonstrate that the indicted parties had arrangements with other hospitals, which carries little to no weight.

However, there is substantial risk that introducing evidence regarding arrangements with other hospitals may confuse and mislead the jury. LRH and Stamford are the only hospitals identified in the Indictment. (*See* Dkt. 1). Notably, these two hospitals had differing contractual arrangements and structures amongst the indicted parties. (Dkt. 443, pp. 15–16). The same would be true for the relationships that the indicted parties may have had with other hospitals. The

differing contractual terms and relationships with other hospitals may confuse the jury given the presence of numerous litigating parties. And the structure of those arrangements is incredibly important because payment for referrals under the AKS are only illegal *if* the service is reimbursable by a *federal healthcare program*. *See* 42 U.S.C. § 1320a-7b(b). As noted above, this case is already incredibly complex. Tasking the jury with synthesizing additional parties, contracts, and payment terms in the context of the already-complex AKS will create a significant risk of confusion and misleading the jury while offering nothing of substance regarding the LRH and Stamford arrangements. Thus, this Court should not allow the Government to introduce evidence related to arrangements the indicted parties may have had with other hospitals.

## CONCLUSION

For all the foregoing reasons, Mr. Hardaway respectfully requests that the Court grant its motions *in limine* and exclude any evidence or testimony related to: (1) the Rise MSOs; and/or (2) any other hospital; and grant such other or further relief the Court deems appropriate.

Dated: September 15, 2023    By:    */s/ Gene R. Besen*
Gene R. Besen
Texas Bar No. 24045491
gbesen@bradley.com
Elisha J. Kobre
Texas Bar No. 24127663
ekobre@bradley.com

Bradley Arant Boult Cummings LLP
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
Telephone (214) 257-9800
Facsimile (214) 939-8787

*Attorneys for Thomas Gray Hardaway*

**CERTIFICATE OF CONFERENCE**

I attempted to contact counsel for the Government via email on September 14, 2023, but I did not receive a response.  However, the Government will likely oppose the relief sought herein.

                                         */s/ Gene R. Besen*
                                         Gene R. Besen

**CERTIFICATE OF SERVICE**

I certify that all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system on this 15th  day of September, 2023.

                                         */s/ Gene R. Besen*
                                         Gene R. Besen